**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| NAIEL NASSAR, M.D., | § | |
| *Plaintiff*, | § | |
| | § | |
| V. | § | |
| | § | |
| UT SOUTHWESTERN MEDICAL | § | CIVIL ACTION NO. 3-08-CV-1337-B |
| CENTER AT DALLAS, et al., | § | |
| *Defendants*. | § | |

**JURY CHARGE**

**GENERAL INSTRUCTIONS FOR THE JURY**[1]

MEMBERS OF THE JURY:

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers and your

---

[1] Unless otherwise stated, these instructions are based on the Fifth Circuit Pattern Jury Instructions – Civil (2006). Defendant is the University of Texas Medical Center at Dallas since the claims against the individually-named defendants, Dr. J. Gregory Fitz and Dr. Beth Levine, have been dismissed by order of this Court. *See* Doc. # 99.

verdict must be unanimous.

You must answer all questions from a preponderance of the evidence. By this is meant the greater weight and degree of credible evidence before you. In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a claim is more likely so than not so. In determining whether any fact has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified

in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence—such as testimony of an eyewitness. The other is indirect or circumstantial evidence—the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

Certain testimony was presented to you through a deposition. A deposition is the sworn, recorded answers to questions asked a witness in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness' testimony may be presented, under oath, in the form of a deposition. Some time before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers were read to you during trial. This deposition testimony is entitled to the same consideration and weighed and otherwise considered by you, insofar as possible, in the same way as if the witness had been present and had testified from the witness stand in court.

When a government entity, such as the University of Texas Southwestern Medical Center at Dallas, is involved in actions, of course it may act only through natural persons such as agents or employees. In general, any official, agent or employee of a government entity may bind the government entity by his acts and declarations made while acting within the scope of his authority delegated to him by the government entity or within the scope of his duties as an employee of the entity.[2]

Do not let bias, prejudice or sympathy play any part in your deliberations. The State universities, their medical centers, and all other persons and entities are equal before the law and must be treated as equals in a court of justice.

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about/on your conduct during the trial. After you have reached your unanimous verdict, your Foreperson is to fill in on the form your

---

[2] *See Household Credit Services, Inc. v. Driscol*, 989 S.W.2d 72, 82 (Tex.App.-El Paso, 1998) (pet. denied).

answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message or question to the bailiff, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong. However, do not give up your honest beliefs solely because the others think differently, or merely to finish the case.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise. Remember that in a very real way you are the judges—judges of the facts. Your only interest is to seek the truth from the evidence in the case.

### SPECIFIC INSTRUCTIONS FOR QUESTIONS 1, 3, AND 4

The Plaintiff, Dr. Naiel Nassar, makes three claims in this case. First, he claims that Defendants the University of Texas Southwestern Medical Center at Dallas (the "UT

Southwestern") engaged in discrimination based on Plaintiff's religion and national origin. Second, he claims that UT Southwestern retaliated against him for complaining of discrimination in his resignation letter.[3] He claims that the retaliation took the form of objecting to his employment by Parkland. Third, Plaintiff claims that Defendant Dr. J. Gregory Fits tortiously interfered with Plaintiff's prospective employment relationship with Parkland.

## FIRST CLAIM – DISCRIMINATION

Plaintiff claims he was discriminated against because of his religion and national origin – namely, that UT Southwestern constructively discharged Plaintiff. Constructive discharge occurs when an employer makes an employee's working conditions so intolerable that a reasonable employee would feel compelled to resign.[4] UT Southwestern denies Plaintiff's claims of discrimination and contends that there was no constructive discharge. It is unlawful for an employer to discriminate against an employee because of the employee's religion or national origin. To prove unlawful discrimination, Plaintiff must prove by a preponderance of the evidence that UT Southwestern constructively discharged Plaintiff because of his religion or national origin. Plaintiff does not have to prove that unlawful

---

[3] Plaintiff's proposed jury charge correctly omits retaliation as a claim since the Court's order granting summary judgment for Parkland Hospital effectively extinguishes recovery on this same claim against Defendant. *See* Doc. # 100 at 9-10, finding no "adverse employment action."

[4] *See Pennsylvania State Police v. Suders*, 542 U.S. 129, 147 (2004) (holding plaintiff alleging constructive discharge "must show working conditions so intolerable that a reasonable person would have felt compelled to resign."). "[T]o succeed on a constructive discharge claim, the plaintiff must show a greater degree of harassment than is required for a hostile work environment claim." *Hockman v. Westward Communs.*, LLC, 407 F.3d 317, 332 (5th Cir.2004).

discrimination was the only reason UT Southwestern constructively discharged Plaintiff.[5] If you find Plaintiff's religion or national origin was a motivating factor in a constructive discharge by UT Southwestern, even though other considerations were factors in the decision, then you must determine whether UT Southwestern proved by a preponderance of the evidence it would have made the same decision even if it had not considered Plaintiff's religion or national origin.

If you find that the same person who promoted the Plaintiff is also one of the people who allegedly discriminated against him, you may consider it inherently inconsistent that an individual who is willing to hire or promote a person who is a member of a protected class will discriminate against that same individual because she is a member of that class.[6]

---

[5] The Fifth Circuit Pattern Jury Instructions recommend the following instruction here: "If you disbelieve the reason(s) Defendant has given for its action, you may infer Defendant [challenged employment action] Plaintiff because of [his/her] [protected trait]." This instruction is contrary to Fifth Circuit law by suggesting that the jury may infer discriminatory intent without any supporting evidence. *See Memberu v. Allright Parking Systems Inc.*, 93 Fed.Appx. 603, 610 (5th Cir. 2004) ("While it is true that a jury could disbelieve [defendant's] witnesses, this does not relieve [plaintiff] of his burden of proffering evidence from which a reasonable jury could infer intentional discrimination.") (§1983 discrimination claim); *Pineda v. United Parcel Service, Inc.*, 360 F.3d 483, 487 (5th Cir. 2004) ("the plaintiff must offer 'some evidence ... that permits the jury to infer that the proffered explanation was a pretext for discrimination. The trier of fact may not simply choose to disbelieve the employer's explanation in the absence of any evidence showing why it should do so.'") (quoting *Swanson v. General Services Admin.*, 110 F.3d 1180, 1185 (5th Cir.1997)).

[6] Here, it is not disputed that Dr. Levine (and Dr. Fitz) each acted affirmatively to advance Plaintiff's promotion to associate professor, which the Promotion and Tenure Committee then approved. And *Stover v. Hattiesburg Public School Dist.*, 549 F.3d 985, 994-95 (5th Cir. 2008), affirms this same-actor inference instruction, stating that:

> This instruction is not a misstatement of the law. *Compare Haun v. Ideal Indus., Inc.*, 81 F.3d 541, 546 (5th Cir.1996) (stating that such evidence is relevant but declining to establish a rule that no inference of discrimination could arise under the same actor circumstances), *with Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir.1996) (noting acceptance of same actor inference by several other circuits and expressing approval of the inference). This assignment of error is without merit.

*Question No. 1a*

Did UT Southwestern constructively discharge Plaintiff by making his working conditions so intolerable that a reasonable employee would have felt compelled to resign? If your answer is "Yes," proceed to Question 1b. If your answer is "No," do not answer the next question.

*Question No. 1b*

Did UT Southwestern constructively discharge Plaintiff because of his religion or national origin? Answer "Yes" or "No."

## SECOND CLAIM – RETALIATION [7]

Plaintiff claims he was retaliated against for engaging in activity protected by Title VII – namely, that UT Southwestern objected to his employment by Parkland and Parkland refused to hire him because he reported being subject to discrimination in his resignation letter. UT Southwestern and Parkland deny Plaintiff's claims and contend that each had legitimate, non-retaliatory reasons for their actions, which were wholly unrelated to Plaintiff's claim of discrimination in his resignation letter. It is unlawful for an employer to retaliate against an employee for engaging in activity protected by Title VII. To prove unlawful retaliation with respect to each Defendant, Plaintiff must prove by a preponderance of the evidence (1) that UT Southwestern objected to Plaintiff's employment by Parkland because of his complaints of discrimination in his resignation letter and (2) that Parkland

---

[7] Plaintiff's proposed jury charge correctly omits retaliation as a claim since the Court's order granting summary judgment for Parkland Hospital effectively extinguishes recovery on this same claim against Defendant. *See* Doc. # 100 at 9-10, finding no "adverse employment action."

refused to hire Plaintiff for the same reason. Plaintiff does not have to prove that unlawful retaliation was the sole reason for Defendant's actions. If you find Plaintiff's complaints of discrimination was a motivating factor in Defendants' actions, even though other considerations were factors, then you must determine whether Defendants proved by a preponderance of the evidence they would have taken the same actions even if Plaintiff had not complained of discrimination. [*BUT SEE* ED. NOTE BELOW RE MIXED MOTIVE IN RETALIATION CASES.[8]] [9]

*Question No. 3a*

Did UT Southwestern object to Plaintiff's employment by Parkland because he reported being subject to discrimination in his resignation letter? Answer "Yes" or "No."

---

[8] ED. NOTE: There is an argument that this instruction conflicts with Fifth Circuit law regarding causation in Title VII retaliation claims, but the law is unsettled, with conflicting unpublished opinions. *Compare Newsome v. Collin County Community College Dist.*, 189 Fed. Appx. 353, 355 (5th Cir. 2006) ("The ultimate determination in an unlawful retaliation case is whether the conduct protected by Title VII was a 'but for' cause of the adverse employment decision. Even if retaliation was a motivating factor in [plaintiff's] termination, no liability for unlawful retaliation arises if the employee would have been terminated even in the absence of the protected conduct.'") (quotations and citations omitted), *with Block v. Kelly Servs., Inc.*, 197 Fed.Appx. 346, 348-49 (5th Cir.2006) (stating mixed-motives analysis applies to retaliation cases). Furthermore, in its published opinions, the Fifth Circuit has not expressly extended the "mixed motive" analysis applicable in Title VII discrimination claims to retaliation claims, s*ee Staten v. New Palace Casino, LLC*, 187 Fed. Appx. 350, 362 (5th Cir. 2006), and has found fundamental error with jury instructions that use the "motivating factor" language, although in a case where the parties agreed that mixed-motive did not apply. *See Septimus v. Univ. Houston*, 399 F.3d 601, 607 n.7, 608-09 (5th Cir. 2005). However, opinions from the Northern District of Texas have held that the mixed motive theory can apply in Title VII retaliation cases and have allowed jury instructions to that effect. *See Smith v. Xerox Corp.*, 584 F.Supp.2d 905, 912 (N.D. Tex. 2008).

[9] The Fifth Circuit Pattern Jury Instructions recommend the following instruction here: "If you disbelieve the reason(s) Defendant has given for its decision, you may infer Defendant [ultimate employment action] Plaintiff because [he/she] engaged in protected activity." This instruction is contrary to Fifth Circuit law by suggesting that the jury may infer retaliatory intent without any supporting evidence. *See Memberu v. Allright Parking Systems Inc.*, 93 Fed.Appx. 603, 610 (5th Cir. 2004) ("While it is true that a jury could disbelieve [defendant's] witnesses, this does not relieve [plaintiff] of his burden of proffering evidence from which a reasonable jury could infer intentional discrimination.") (§1983 discrimination claim); *Pineda v. United Parcel Service, Inc.*, 360 F.3d 483,487 (5th Cir. 2004) ("the plaintiff must offer 'some evidence ... that permits the jury to infer that the proffered explanation was a pretext for discrimination. The trier of fact may not simply choose to disbelieve the employer's explanation in the absence of any evidence showing why it should do so.'") (quoting *Swanson v. General Services Admin.*, 110 F.3d 1180, 1185 (5th Cir.1997))

If your answer is "Yes," proceed to Question 3b. If your answer is "No," do not answer the next question.

*Question No. 3b*

Has UT Southwestern proven that it would have objected to Plaintiff's employment with Parkland even if he had not reported being subject to discrimination in his resignation letter? Answer "Yes" or "No."

*Question No. 4a*

Did Parkland refuse to hire Plaintiff's because he reported being subject to discrimination in his resignation letter? Answer "Yes" or "No." If your answer is "Yes," proceed to Question 4b. If your answer is "No," do not answer the next question.

*Question No. 4b*

Has Parkland proven that it would have refused to hire Plaintiff even if he had not reported being subject to discrimination in his resignation letter? Answer "Yes" or "No."

## GENERAL INSTRUCTIONS ON DAMAGES[10]

If the plaintiff has proven his claim against the defendant by a preponderance of the evidence, you must determine the damages to which the plaintiff is entitled. You should not interpret the fact that I have given instructions about the plaintiff's damages as an indication in any way that I believe that the plaintiff should, or should not, win this case. It is your task first to decide whether the defendant is liable. I am instructing you on damages only so that you will have guidance in the event you decide that the defendant is liable and that the plaintiff is entitled to recover money from the defendant.

If you find that the defendant is liable to the plaintiff, then you must determine an amount that is fair compensation for all of the plaintiff's damages. These damages are called compensatory damages. The purpose of compensatory damages is to make the plaintiff whole—that is, to compensate the plaintiff for the damage that the plaintiff has suffered. You may award compensatory damages only for injuries that the plaintiff proves were proximately caused by the defendant's allegedly wrongful conduct. The damages that you award must be fair compensation for all of the plaintif"'s damages, no more and no less. [Damages are not allowed as a punishment and cannot be imposed or increased to penalize the Defendant.] You should not award compensatory damages for speculative injuries, but

---

[10] Defendant does not submit any instruction or question on mental anguish recovery or punitive damages because they are not alleged against Defendant, and in the case of punitive damages, the Defendant is immune. *See* Doc. # 11 at 10 ("Actual Damages, Special Damages, & Attorney's Fees"); and s*ee Moore v. Dallas Area Rapid Transit*, 2006 WL 148735 (N.D. Tex., 2006) *(citing Oden v. Oktibbeha, County, Miss.*, 246 F.3d 458, 466 (5th Cir.), *cert. denied*, 534 U.S. 948 (2001); and *Liner v. Hospital Service Dist. No. 1 of Jefferson Parish*, 230 Fed.Appx. 361, 365-66 (5th Cir. 2007) (plain error standard of review applied to deny an award of punitive damages against political subdivisions because § 1981a(b)(1) precludes them).

only for those injuries which the plaintiff has actually suffered or that the plaintiff is reasonably likely to suffer in the future.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that the plaintiff prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.

You must not award compensatory damages more than once for the same injury. For example, if the plaintiff prevails on two claims and establishes a dollar amount for his injuries, you must not award him any additional compensatory damages on each claim. The plaintiff is only entitled to be made whole once, and may not recover more than he has lost. Of course, if different injuries are attributed to the separate claims, then you must compensate the plaintiff fully for all of his injuries.

You may impose damages on a claim solely upon the defendant that you find are liable on that claim.

A person who claims damages resulting from the wrongful act of another has a duty under the law to use reasonable diligence to mitigate—to avoid or minimize those damages.

If you find a defendant is liable and the plaintiff has suffered damages, the plaintiff may not recover for any item of damage which he could have avoided through reasonable effort. If you find by a preponderance of the evidence the plaintiff unreasonably failed to take advantage of an opportunity to lessen his damages, you should deny him recovery for those damages which he would have avoided had he taken advantage of the opportunity.

You are the sole judge of whether the plaintiff acted reasonably in avoiding or minimizing his damages. An injured plaintiff may not sit idly by when presented with an opportunity to reduce his damages. However, he is not required to exercise unreasonable efforts or incur unreasonable expenses in mitigating the damages. The defendant has the burden of proving the damages which the plaintiff could have mitigated. In deciding whether to reduce the plaintiff's damages because of his failure to mitigate, you must weigh all the evidence in light of the particular circumstances of the case, using sound discretion in deciding whether the defendant has satisfied his burden of proving that the plaintiff's conduct was not reasonable.

You should consider the following elements of damage, to the extent you find them proved by a preponderance of the evidence: Back Pay.[11]

---

[11] *Roberts v. U.S. Postmaster General*, 947 F.Supp. 282, 287 (E.D. Tex. 1996) ("back pay is the difference between what the plaintiff earned as a consequence of the discrimination and what the plaintiff would have earned absent the discrimination") (citing *Cuesta v. Texas Dept. of Criminal Justice*, 805 F.Supp. 451, 461 (W.D.Tex.1991)).

The Court should determine any entitlement to "front pay." *See Mota v. University of Texas Houston Health Science Center*, 261 F.3d 512, 526 (5th Cir., 2001) (footnotes omitted) ("'[F]ront pay may be awarded if reinstatement is not feasible . . .' . . . Although front pay is an equitable remedy for the district court to determine, the court may empanel an advisory jury."). In regard to front-pay, "Although courts have defined 'front pay' in numerous ways, front pay is simply money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement." *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 845 (2001).

"Back pay" is that amount of wages and employment benefits that plaintiff would have earned if he had not been subjected to his employer's unlawful conduct, less the total amount plaintiff earned during the same period in wages, earnings and benefits.

### SPECIFIC INSTRUCTIONS FOR QUESTIONS 2 AND 5

If you answered "Yes" to Questions 1b, 3b, or 4b, and "No" to the corresponding Questions 3c and/or 4c, Dr. Nassar is entitled to recover an amount that will fairly compensate him for any damages he has suffered as a result of Defendants' conduct.

*Question 2*

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Dr. Nassar for his damages, if any, that resulted from the conduct you have found in Question 1b?

Answer in dollars and cents for damages, if any.  Answer only for that conduct for which you have answered "Yes" in Question 1b.

(1) Back pay:

Answer: _____

*Question 5*

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Dr. Nassar for his damages, if any, that resulted from the conduct you have found in Question 3a and/or 4a?

Answer in dollars and cents for damages, if any.  Answer only for that conduct for which you have answered "Yes" in Question 3a and 4a.

    (1)    Back pay:

Answer: _____

                        Respectfully submitted,

                        GREG ABBOTT
                        Attorney General of Texas

                        C. ANDREW WEBER
                        First Assistant Attorney General

                        DAVID S. MORALES
                        Deputy Attorney General for Civil Litigation

                        ROBERT B. O'KEEFE
                        Chief, General Litigation Division


                        /s/   [Lars Hagen]_____
                        LARS HAGEN
                        Texas Bar No. 24034470
                        DARREN G. GIBSON
                        Texas Bar No. 24068846
                        Assistant Attorneys General
                        General Litigation Division
                        P. O. Box 12548, Capitol Station
                        Austin, Texas 78711-2548
                        (512) 463-2120
                        (512) 320-0667 *fax*
                        Attorneys for Defendants
                        UT Southwestern Medical Center,
                        Beth Levine, and J. Gregory Fitz

## CERTIFICATE OF SERVICE

      I certify that a true and correct copy the foregoing submission has been sent via electronic filing on the date of its submission, May 3, 2010, to the below-identified counsels of record.


Brian P Lauten  
The Lauten Firm PC  
4040 N Central Expressway, Suite 150  
Dallas, TX 75204  
Attorney for Plaintiff

Charla Aldous  
Aldous Law Firm  
2305 Cedar Springs Rd., Ste. 200  
Dallas, TX 75201  
Attorney for Plaintiff

Michael V. Abcarian  
Jennine R. Lunceford  
Fisher & Phillips  
1601 Elm St , 4343 Thanksgiving Tower  
Dallas, TX 75201-7254  
Attorneys for Parkland Health & Hospital System

                                       /s/    [Lars Hagen]  
                                       LARS HAGEN  
                                       Assistant Attorney General