UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NAIEL NASSAR, M.D. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:08-CV-1337-B |
| | § | |
| UNIVERSITY OF TEXAS | § | |
| SOUTHWESTERN MEDICAL CENTER, | § | |
| PARKLAND HEALTH & HOSPITAL | § | |
| SYSTEM, BETH LEVINE, M.D., and | § | |
| J. GREGORY FITZ, M.D. | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the motion of Plaintiff, Naiel Nassar, M.D. ("Plaintiff" or "Dr. Nassar"), for an award of attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k) following a jury verdict in his favor on his claims of discrimination and retaliation against Defendant UT Southwestern Medical Center at Dallas ("Defendant" or "UT Southwestern"). (doc. 146). Upon consideration of the arguments and submissions of the parties in light of the governing authority, the Court **GRANTS** Plaintiffs' motion part and **DENIES** it in part. For the reasons set forth below, the Court awards attorneys' fees in the sum of $489,927.50 and taxable costs of $10,705.61.

I.

BACKGROUND

Dr. Nassar, a Muslim physician of Egyptian national origin, was an Assistant Professor of Medicine at UT Southwestern whose primary duty was to provide patient care at the HIV/AIDS clinic at Parkland Hospital ("Parkland"). Plaintiff's lawsuit is grounded in allegations that he faced

discriminatory and harassing treatment at UT Southwestern that constituted constructive discharge, that he reported that treatment, and that as a result, UT Southwestern officials blocked his attempt to gain employment at Parkland.[1] He asserted claims against UT Southwestern, Parkland, and two UT Southwestern physicians (Drs. Fitz and Levine) for discrimination and retaliation under Title VII and Section 1981, tortious interference with business relations, and exemplary damages. (doc. 11). On February 5, 2010, the Court dismissed Dr. Nassar's claims against Defendants Dr. Levine and Dr. Fitz[2] and granted summary judgment on his claim for tortious interference. (doc. 99). On February 19, 2010, the Court granted Defendant Parkland's motion for summary judgment. (doc. 100).

The remaining claims of discrimination and retaliation against UT Southwestern were tried to a jury beginning on May 17, 2010. The Court bifurcated the issues of liability and damages. On May 24, 2010, the jury returned a verdict for Dr. Nassar on both claims, finding (1) that UT Southwestern constructively discharged Dr. Nassar on the basis of his race, national origin, or religious preference and (2) that UT Southwestern retaliated against Dr. Nassar by blocking or objecting to his employment by Parkland because he engaged in protected activity. (doc. 140). Following testimony on damages, the jury returned a verdict on May 27, 2010 awarding Dr. Nassar $438,167.66 in back pay and benefits and $3,187,500.00 in compensatory damages. (doc. 143).

On June 11, 2010, Plaintiff filed his motion for attorneys' fees, seeking a total of $496,302.50

---

[1] The relevant factual background is more fully described in the Court's rulings on summary judgment (docs. 99 and 100) and the trial transcript and is set forth here only to the extent necessary to frame the discussion of attorneys' fees and costs.

[2] The Court dismissed those claims against Drs. Levine and Fitz that were brought against them in their individual capacities.

in attorneys' fees and $11,098.59 in costs and expenses. (doc. 146). The fees and expenses are divided between two law firms, Sawicki & Lauten, L.L.P. and the Aldous Law Firm, and the application is supported by the declarations of attorneys from each firm together with itemized time records. (*Id*; Lauten Decl.; Walker Decl.).

## II.

## ANALYSIS

Section 706(k) of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e-5(k), provides in relevant part that a "court, in its discretion, may allow the prevailing party, other than the [Equal Employment Opportunity] Commission or the United States, a reasonable attorney's fee as part of the costs." The jury found in Dr. Nassar's favor on his Title VII claims for discrimination and retaliation, awarding substantial damages. Where a statute provides for an award of attorneys' fees, an award should be given unless "special circumstances" render the award unjust. *Blanchard v. Bergeron*, 489 U.S. 87, 89 n.1 (1989). The Court finds no such special circumstances[3] in this case, and none have been argued, that would render an award unjust. Defendant does not challenge Dr. Nassar's status as a prevailing party or his entitlement to reasonable attorneys' fees. The task before the Court is to determine what award of attorneys' fees and costs is "reasonable." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

In awarding statutorily-authorized attorneys' fees, district courts in the Fifth Circuit employ a two-step procedure. *See Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 323-24 (5th Cir. 1995). First, the reasonable number of hours expended by counsel is multiplied by the reasonable

---

[3] The "special circumstances" exception is narrow and requires a "strong showing" to justify a denial of attorneys' fees to a prevailing plaintiff. *Gibbs v. Town of Frisco City Police Dep't*, 626 F.2d 1218, 1221 (5th Cir. 1980).

hourly rate charged by lawyers in the community. *Id.* at 324. The product of this multiplication is the base fee, or "lodestar", which the Court then either accepts or adjust upward or downward based on twelve factors enunciated in *Johnson v. Georgia Highway Express, Inc..*, 488 F.2d 714 (5th Cir. 1974).[4] The Court may modify the lodestar if any of the *Johnson* factors not already considered in determining the lodestar warrant an adjustment. *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The "'lodestar' figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence." *Perdue v. Kenny A.*, 130 S.Ct. 1662, 1672 (2010). It is presumptively reasonable and should be modified only in exceptional cases. *Watkins*, 7 F.3d at 457 (citing *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)).

Plaintiff moves the Court to award attorneys' fees in the amount of $496,302.50 for the work of four attorneys from two law firms who have represented Dr. Nassar since 2008. (doc. 146, p. 5; Lauten Decl. ¶ 5; Walker Decl. ¶ 7). Plaintiff's figure is the result of a lodestar calculation described in attorney declarations, and is supported by attached documentation of the time spent on particular tasks. (*Id*; Ex. 1 to Lauten Decl; Ex. 1 to Walker Decl.). Applying the *Johnson* factors, Plaintiff further moves for an upward adjustment of the lodestar figure. (doc. 146, p. 6). Defendant objects to both the hours expended and the rates charged in the calculation of the lodestar and also moves for a downward departure from the lodestar figure. (doc. 158, pp. 1-2).

 A. *Calculation of the Lodestar*

"The lodestar is the product of the number of hours reasonably expended on the litigation

---

[4] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the case; (3) the skill required; (4) the preclusion of other employment; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed; (8) the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

multiplied by a reasonable hourly billing rate." *League of United Latin Am. Citizens # 4552 v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997). The Court will evaluate each component in turn, together with Defendant's objections.

The first step in the calculation of the lodestar is to determine the number of hours reasonably expended by counsel. The Court may exclude from the lodestar calculation "excessive, redundant or otherwise unnecessary" hours or hours that lack proper documentation. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *Wright v. Blythe-Nelson,* No. 3:99-cv-2522-D, 2004 WL 2870082 at *5 (N.D. Tex. Dec. 13, 2004). The prevailing party, Dr. Nassar, bears the burden of establishing with sufficient documentation both that the total number of hours claimed were reasonable and that particular hours were reasonably expended. *Hensley*, 461 U.S. at 434; *Bode v. U.S.*, 919 F.2d 1044, 1047 (5th Cir. 1990).

Defendant lodges several challenges to the number of hours claimed and the sufficiency of their documentation. (doc. 158, pp. 5-8). UT Southwestern's challenges can be characterized as objections to the necessity of the hours claimed and objections to the documentation of particular hours. First, UT Southwestern argues that "Plaintiff has failed to establish that engaging two separate law firms was not redundant or excessive for the nature and scope of this case." (*Id.* at p. 5). The Court will not reduce the hours on this ground in this case. Though Dr. Nassar was represented by two law firms, he requests fees only for the work of four attorneys. The Court observed the performance of the attorneys at trial and discerned a reasonable division of labor; billing records submitted by each firm reflect that division of labor and include a permissible amount of collaboration that does not appear on the Court's inspection to be redundant or excessive. *See Heasley v. Comm'r of Internal Revenue*, 967 F.2d 116, 123 (5th Cir. 1992) (Noting the trial court's

opportunity to observe and assess the credibility of the attorneys submitting fee application).

UT Southwestern also argues that Dr. Nassar's "billing records appear to include a number of time entries detailing work that would include previously dismissed claims." (doc. 158, p. 5). Dr. Nassar's complaint included claims against Parkland, Dr. Fitz and Dr. Levine, as well as tort claims that were dismissed. "A prevailing litigant may not recover for hours devoted solely to claims against other parties" or unsuccessful claims. *Kellstrom*, 50 F.3d at 327. Dr. Nassar contends that all hours included in his fee claim were incurred in pursuit of his successful Title VII claims against UT Southwestern. *See* Lauten Decl., ¶ 5 ("[T]he work described [ ] was exclusively performed in the prosecution of the discrimination and retaliation alleged against UT Southwestern Medical Center."). UT Southwestern does not identify any time entries that it contends were incurred solely for claims against other defendants, incurred in pursuit of unsuccessful claims, or that are otherwise unrecoverable and the Court's review does not reveal such entries. Through attorney declarations and the attached billing records, Dr. Nassar has met his burden of establishing that the fees claimed were incurred in the prosecution of his Title VII claims against UT Southwestern. The potential applicability of some of the claimed work to dismissed claims would not undermine Dr. Nassar's entitlement to fees for "all hours necessary to litigate those issues" on which he succeeded. *Kellstrom*, 50 F.3d at 327. *See also*, *Hensley*, 461 U.S. at 434-35 (No reduction necessary where claims against multiple parties share a "common core of facts" or involve "related legal theories."). Accordingly, the Court declines to reduce Dr. Nassar's claimed hours on the basis of this objection.

Defendant's objection to the sufficiency of certain entries has merit. "The fee applicant has the burden of presenting adequate documentation of the hours reasonably expended." *LULAC*, 119 F.3d at 1233. A prevailing party's "documentation must be sufficient for the court to verify that the

applicant has met is burden." *Kellstrom*, 50 F.3d at 324. "If the applicant's documentation of the hours claimed is 'vague or incomplete,' the district court may reduce or eliminate those hours." *LULAC*, 119 F.3d at 1233. While attorneys are not required to "'write a book' to describe in excruciating detail the professional services rendered," they must provide sufficient detail to enable the Court to apply its discretion. *Id*. The overwhelming majority of Dr. Nassar's entries contain a "short but thorough description of the services rendered." *Walker v. City of Mesquite*, 313 F.3d 246, 252 (5th Cir. 2002). Defendant specifically challenges the time entries attached to Mr. Walker's declaration consisting of "prepare for trial" or "trial preparation." (doc. 158, p. 7). The Court agrees that such "exceptionally terse descriptions of activities do not satisfy the applicant's burden." *Wright*, 2004 WL 2870082 at *5. As a result, the Court has the discretion to "reduce or eliminate those hours," which represent a value of $20,250.[5]

The Court will not eliminate the hours, which reflect the work of Charla Aldous, one of Dr. Nassar's principal trial attorneys. Spare as the descriptions are, Ms. Aldous' preparation was evident and her presentation at trial superb. While the description is hardly illuminating, the number of hours claimed appears to be reasonable in light of the results obtained and the Court's observation of the attorney's performance at trial. Nevertheless, the standard in the Northern District of Texas requires a fee applicant to provide more than an "exceptionally terse description[ ] of activities" and the descriptions "prepare for trial" or "trial preparation" do not permit the Court to conduct a

---

[5] The Court calculates this figure by adding the values of four entries: "Begin trial preparation," in the amount of 8.6 hours, "Continued trial preparation" in the amount of 11.5 hours, and "trial preparation" in the amounts of 2.3 and 4.6 hours. Though the billing records include entries that tread close to the limit, the Court finds that in context, only the entries described here (totaling 27 hours) merit further consideration by the Court. *Kellstrom*, 50 F.3d at 327.

meaningful evaluation of the challenged hours. *Id*. Upon consideration of the evidence before the Court and in exercise of discretion, the Court concludes that a ten percent reduction is appropriate for those 27 hours that, though likely necessary, were inadequately documented. With the exception of those hours, the Court finds that the remaining hours for which Dr. Nassar seeks attorneys' fees were reasonably expended and sufficiently documented. The Court declines to award fees prospectively for those services that may be incurred on post-trial motions or appeal. (*See* Lauten Decl. ¶ 7; Walker Decl. ¶ 9). *Wright*, 2004 WL 2870082 at * 4 n. 6 ("This court's uniform practice is to deny such requests without prejudice to awarding them on a subsequent application based on the fees incurred.").

UT Southwestern also challenges the hourly rates sought by Dr. Nassar's attorneys. (doc. 158, pp. 7-9). In computing the lodestar, the Court considers the prevailing market rates in the community to determine a "reasonable hourly rate." *League of United Latin Am. Citizens # 4552*, 119 F.3d at 1234. The "relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits." *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). "When an attorney's customary billing rate is the rate at which the attorney requests the lodestar be computed and that rate is within the range of prevailing market rates, the court should consider this rate when fixing the hourly rate to be allowed." *Kellstrom*, 50 F.3d at 328. The prevailing party bears the burden of producing evidence that the requested rate accords with the standard. *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984); *Id.* at 368. "The hourly fee awarded must be supported by the record; the district court may not simply rely on its own experience in the relevant legal market to set a reasonable hourly billing rate." *LULAC*, 119 F.3d at 1234.

Defendant argues that Dr. Nassar has not met his burden and that the rates requested ($400

per hour for Mr. Walker, $500 per hour for Mr. Lauten, $500 per hour for Ms. Lauten, and $750 per hour for Ms. Aldous) are excessive. Dr. Nassar supports the claimed rates with affidavits from each law firm asserting that the rates sought are both their customary (or previously accepted) rates and within the prevailing rates in this community. (Lauten Decl., ¶ 5, Walker Decl. ¶ 6). UT Southwestern argues that Dr. Nassar's evidence is insufficient and does not include affidavits from other practicing attorneys to show that the rates are within the ranges appropriate in this market. (doc. 158, pp. 8-9), but it does not offer evidence of what would constitute an appropriate rate.

The lodestar computation is designed to produce "an award that *roughly* approximates the fee that the prevailing attorney would have secured if he or she had been representing a paying client who was billed by the hour in a comparable case." *Kenny A.*, 130 S.Ct at 1676. This reflects the Supreme Court's instruction that a "reasonable attorney's fee is one that is adequate to attract competent counsel, but that does not produce windfalls to attorneys." *Id.* (citing *Blum*, 465 U.S. at 897). "There is no windfall of attorneys' fees when the district court properly considers the relationship between the extent of the success and the amount of the fee award." *EEOC v. Clear Lake Dodge*, 60 F.3d 1146, 1154 (5th Cir. 1995). Dr. Nassar's failure to include affidavits of other practicing attorneys is not necessarily fatal, though such evidence would be helpful in a case where rates are disputed. *Tollett*, 285 F.3d at 368. In the Court's review, "the degree of the plaintiff's overall success goes to the reasonableness of a fee award." *EEOC v. Clear Lake Dodge*, 60 F.3d 1146, 1154 (5th Cir. 1995); *see also Farrar v. Hobby*, 506 U.S. 103, 114 (1992) ("Indeed, 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'") (citations omitted)).

In light of the degree of success obtained and the evidence submitted, the Court finds that

the lodestar may be calculated using the requested rates, with one exception. Dr. Nassar's application includes affidavits and other evidence that describes the relevant experience and customary (or previously accepted) rates of each of his attorneys with the exception of Amy Lauten. While the Court may consider the credibility of the attorney submitting an application, it must base its conclusion on the evidence rather than its experience. *Heasley*, 967 F.2d at 123; *LULAC*, 119 F.3d at 1234. Ms. Lauten's rate is not without evidentiary support, but that evidentiary support is limited to a few unadorned lines in an attorney declaration. Accordingly, in the exercise of discretion the Court finds it appropriate to reduce her billing rate by 20% to $400, which is reasonable in light of the superior results obtained. The other rates, when applied to the number of hours as modified above, yield a lodestar calculation that both provides reasonable compensation and avoids windfall. This is not to say that these rates are typical or will be routinely accepted, only that they are supported by the record and are reasonable given the specific facts of this case and the remarkable degree of success obtained. A lodestar so calculated gives "adequate consideration to the result obtained relative to the fee award, and the result obtained relative to the result sought." *Migis v. Pearle Vision*, 135 F.3d 1041, 1048 (5th Cir. 1998)

     B.     *Adjustment of the Lodestar*

Both Dr. Nassar and UT Southwestern argue for an adjustment of the lodestar figure based on the twelve *Johnson* factors described above. *See supra*, n. 4 (listing factors that may be considered). The Supreme Court recently addressed the scope of the trial court's discretion to adjust the lodestar figure in *Perdue v. Kenny A.* 130 S.Ct 1662 (2010). As a rule, the Supreme Court noted, the figure reached through the lodestar calculation is presumptively reasonable, and that presumption is a "strong one." *Id.* at 1673. The party seeking an adjustment of the lodestar bears

the burden of establishing that it is justified. *See Id.* (reviewing requested upward adjustment of the lodestar) and *Kellstrom*, 50 F.3d at 329 (reviewing requested reduction of the lodestar). This burden is met by presenting "specific evidence" that the adjustment is "necessary to provide fair and reasonable compensation," that is, to provide a sufficient inducement for a capable attorney to take meritorious cases without providing a windfall. *Kenny A.*, 130 S.Ct. at 1672-73.

"Of the *Johnson* factors, the court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel." *Saizan v. Delta Concrete Prods. Co., Inc.*, 447 F.3d 795, 800 (5th Cir. 2006) (citing *Migis*, 135 F.3d at 1047). Of these, the most critical factor is the degree of success obtained. *Farrar*, 506 U.S. at 114. The Court may not modify the lodestar based on a *Johnson* factor that was already taken into account in determining the lodestar; "to do so would be impermissible double counting." *Saizan*, 448 F.3d at 800.

Dr. Nassar argues that the *Johnson* factors justify an upward departure and UT Southwestern contends that application of the same factors justifies a downward departure, if any. (doc. 146, pp. 3-6; doc. 158, pp. 9-13). The Court denies both parties' requests for adjustment of the lodestar. The *Johnson* factors identified as most relevant were considered in the Court's determination of the lodestar. The time and labor required (factor 1) was fully considered when determining and adjusting the number of hours reasonably expended by counsel. The novelty and difficulty of the issues (factor 2) were "fully reflected in the number of billable hours recorded by counsel." *Kenny A.*, 130 S.Ct. at 1673. Having considered these factors, the Court will not independently analyze the varying characterizations of this case offered by the parties. Similarly, the skill required (factor 3), the preclusion of other employment by the attorney (factor 4), and the customary fee charged

for those services in the relevant community (factor 5) are typically – and were in this case – considered in evaluating the hourly rates used in calculating the lodestar. *See id.* ("considerations concerning the quality of a prevailing party's counsel's representation are reflected in the reasonable hourly rate") and *Kimberly-Clark*, 2008 WL at * 8 (rates charged "take into account the fact that accepting employment on any particular matter will necessarily limit the attorneys' ability to accept other cases"). Whether the fee is fixed or contingent (factor 6) "cannot serve as a basis for enhancement of attorneys' fees awarded" and UT Southwestern has presented no evidence that this factor should justify a downward departure. *Shipes v. Trinity Indus.*, 987 F.2d 311, 323 (5th Cir. 1993). The parties presented no evidence that time limitations (factor 7) justify an adjustment. The Court considered the results obtained (factor 8) in its lodestar analysis; the results obtained were neither partial and limited nor are they such that a reasonable lodestar would not fairly compensate Dr. Nassar's attorneys. The experience, reputation, and ability of the attorneys (factor 9) was considered in calculating the lodestar does not justify a modification. No evidence indicates that "the lodestar calculation does not adequately measure the attorney's true market value, as demonstrated in part during the litigation." *Kenny A.*, 130 S.Ct at 1674. Neither party has presented "specific evidence" that the remaining factors justify an adjustment of the lodestar.

*C. Costs*

Dr. Nassar also seeks to recover certain out of pocket costs incurred in this lawsuit. (doc. 146, p6). The Lauten firm seeks $10,556.59 and the Aldous firm seeks $542.00 in costs for a total of 11,098.59 (Lauten Decl. ¶ 6; Walker Decl.¶ 8). Federal Rule of Civil Procedure 54 allows a prevailing party to recover certain costs, excluding attorneys' fees. Fed. R. Civ. P. 54(d). The costs taxable to an unsuccessful litigant include fees of the clerk, marshal, and court reporter; fees for

printing and witnesses; fees for exemplification and copies of papers obtained for use in the case; docket fees; and compensation of court appointed experts and interpreters. 28 U.S.C. § 1920. Dr. Nassar bears the burden of supporting his request for costs and expenses "with evidence documenting the costs incurred." *Wright*, 2004 WL 2780082 at *9.

UT Southwestern does not object specifically to any costs claimed or challenge the documentation, reasonableness, or necessity of any claimed cost or expense. The majority of Dr. Nassar's claimed expenses are supported by appropriate documentation and may be recovered by a prevailing party. Nevertheless Plaintiff's request includes several categories of charges that do not appear to be taxable as costs, including fees for parking ($145.00), supplies ($29.77), and meals ($218.21), and Plaintiff does not offer authority for their recovery. As a result, in its discretion, the Court declines to award those costs and will reduce its award of costs by $392.98. The Court finds that Dr. Nassar may recover the remaining costs, in the amount of $10,705.61.

## III.

## CONCLUSION

For the reasons stated above, the Court finds that Dr. Nassar is entitled to attorneys' fees calculated through the lodestar method as modified in this Order and declines to adjust the lodestar upwards or downwards. Accordingly, the Court **GRANTS** in part Dr. Nassar's motion and **DENIES** it in part. The Lauten firm may recover attorneys' fees in the amount of $314,720, which accounts for the reduction in the hourly rate described above. The Aldous firm may recover attorneys' fees in the amount of $175,207.50, which accounts for the reduction in hours described above. Dr. Nassar is entitled to recover costs in the amount of $10,705.61. The Court denies Dr. Nassar's prospective request for attorneys' fees that may be incurred in post trial motions or appeal.

SO ORDERED

SIGNED: July 27, 2010

                                        _____
                                        JANE J. BOYLE
                                        UNITED STATES DISTRICT JUDGE