UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NAIEL NASSAR, M.D. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:08-CV-1337-B |
| | § | |
| UNIVERSITY OF TEXAS | § | |
| SOUTHWESTERN MEDICAL CENTER, | § | |
| PARKLAND HEALTH & HOSPITAL | § | |
| SYSTEM, BETH LEVINE, M.D., and | § | |
| J. GREGORY FITZ, M.D. | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the motion of Plaintiff, Naiel Nassar, M.D. ("Plaintiff" or "Dr. Nassar") for entry of an award of front pay (doc. 147). For the reasons set forth below, the Court **DENIES** Plaintiff's motion for front pay.

## I.

## BACKGROUND

Plaintiff, Naiel Nassar, M.D., ("Plaintiff" or "Dr. Nassar") prevailed in a jury trial of his Title VII claims for constructive discharge and retaliation against Defendant University of Texas Southwestern Medical Center at Dallas ("Defendant" or "UT Southwestern").[1] (doc. 140). After rendering its verdict on liability, the jury heard evidence and argument on the issue of damages and

---

[1] Further background on the nature of the claims asserted and evidence produced can be found in the Court's order on Plaintiff's motion for entry of final judgment. (doc. 174). This memorandum opinion and order sets forth only those factual contentions necessary to the Court's exercise of its discretion to award front pay.

was instructed on the proper measure of damages, the Plaintiff's duty to mitigate, and the affirmative defenses asserted by Defendant. The jury rendered a damages verdict, awarding back pay and benefits in the amount of $438,167.66 and compensatory damages in the amount of $3,187,500.00. (doc. 143).

Plaintiff subsequently applied to the Court for an award of front pay. (doc. 147). Following trial, Defendant obtained new counsel, and the Court granted its motion to extend the response deadlines to allow Defendant to review the record so that its response could be grounded in the record. (doc. 157). On August 13, 2010, Defendant filed its response (doc. 171) arguing that front pay is inappropriate because reinstatement was not shown to be infeasible, and objecting both to Plaintiff's baseline and evidentiary support for his calculation of front pay as well his requested amount. (*Id*. at pp. 1-2). Plaintiff countered that his requested award is necessary to compensate him for his future losses and is supported by the same evidence credited by the jury in measuring his past damages. (doc. 173, pp. 6-7). He argues that the length of the award is not excessive given the particulars of this case. (*Id*. at pp. 8-10).

## II.

## ANALYSIS

Title VII allows courts the discretion to award front pay as part of its authority to provide "other equitable relief as the court deems appropriate." 42 U.S.C. § 2000e-5(g)(1). Front pay may be awarded if it is required in order to make the plaintiff whole and is "intended to compensate the plaintiff for lost future wages and benefits." *Mota v. Univ. of Texas Houston Health Science Center*, 261 F.3d 512, 526 (5th Cir. 2001). "In exercising its discretion to award front pay, the district court must consider whether an award of front pay is reasonable under the facts of the case." *Downey v.*

*Strain*, 510 F.3d 534, 544 (5th Cir. 2007). The Fifth Circuit "has identified several factors to be considered in determining the amount of a front pay award: (1) the length of prior employment, (2) the permanency of the position held, (3) the nature of the work, (4) possible consolidation of jobs, and (6) the myriad other non-discriminatory factors which could validly affect the employer/employee relationship." *Id.* (citing *Reneau v. Wayne Griffin & Sons, Inc.*, 945 F.2d 869, 871 (5th Cir. 1991)).

As a threshold matter, although reinstatement (or instatement) is the preferred remedy, "front pay may be awarded if reinstatement is not feasible." *Reneau*, 945 F.2d at 870. The "district court must consider 'and adequately articulate' its reasons for finding reinstatement to be infeasible and for considering an award of front pay instead." *Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 489 (5th Cir. 2007) (quoting *Julian v City of Houston,* 314 F.3d 721, 729 (5th Cir. 2002)). Defendant objects to an award of front pay on the grounds that Dr. Nassar's application did not address reinstatement and that it is willing to reinstate Dr. Nassar to the position to which it originally offered to promote him. (doc. 171, p. 3). Dr. Nassar replies that the jury's finding that he was constructively discharged from UT Southwestern, together with his testimony that he was not willing to return to work under the supervision of Dr. Beth Levine (who remains the chair of the division of infectious diseases), support a finding that reinstatement is not feasible. (doc. 173, pp. 3-4). The Fifth Circuit has concluded that reinstatement is infeasible where "a hostile relationship exists between the employer and the plaintiff." *Mota*, 261 F.3d at 526 (quoting *Woodhouse v. Magnolia Hosp.*, 92 F.3d 248, 257 (5th Cir. 1996)). During the trial, the Court had a first-hand opportunity to learn the details of the interactions between Dr. Nassar and UT Southwestern that underlie this suit and finds that the record adequately supports Dr. Nassar's contention that a hostile relationship

exists between him and the leadership of UT Southwestern. The foundation that supported the jury's conclusion that Dr. Nassar was constructively discharged and retaliated against by individuals who remain at UT Southwestern also supports the Court's conclusion that the relationship between the parties precludes reinstatement.

Upon finding that reinstatement is infeasible, the Court must consider whether and in what amount an award of front pay is equitably required. *Reynolds v. Octel Commc'ns Corp.*, 924 F.Supp. 743 (N.D. Tex. 1995) ("the court, rather than the jury, determines the amount of the award.") Dr. Nassar prevailed in his claims that he was constructively discharged from UT Southwestern and that he was retaliated against such that he was prevented from accepting a job with a higher salary at Parkland. (doc. 140). As described in the Court's order of Final Judgment, Dr. Nassar is entitled to be made whole for the damages arising from each of his distinct damages caused by UT Southwestern's unlawful employment practices. In assessing his future losses, the amount he would have earned from Parkland is a relevant consideration.

As mentioned, in assessing if and in what amount front pay should be awarded, the Court may consider, among other factors, the length of prior employment and the permanency of the position held. *Downey*, 510 F.3d at 544. Neither of these factors weigh in Dr. Nassar's favor in this analysis given that he never worked at Parkland and, unlike the position at UT Southwestern, the position he sought at Parkland was not protected by tenure. Although an "at-will status, taken alone is not a sufficient basis for denying" a request for front pay and will not preclude an award on those grounds, *Julian*, 314 F.3d at 729, the Court finds that a future award based on the potential income

from Parkland is not equitably required in this case.² Because Dr. Nassar never worked at Parkland his basis for calculating the value of the Parkland job going forward is necessarily theoretical. While fixing the value of the prospective remedy of front pay "is necessarily speculative in nature," the Court may properly consider a plaintiff's time - or lack thereof - in the position when considering the equities. The consideration is relevant in this case, where the only testimony regarding the Parkland compensation package came from Plaintiff, who did not (though at least in part due to Defendant's conduct) have experience with the particulars. Though his testimony was sufficient to describe his losses in the past,³ its predictive value diminishes as time passes. Moreover, the Court may consider "myriad other non-discriminatory factors which could validly affect the employer/employee relationship." *Downey*, 510 F.3d at 544. Here, those factors that would necessarily influence Dr. Nassar's future income would involve Dr. Nassar's future interaction with Parkland rather than UT Southwestern, decreasing the value of testimony based solely on his previous experience. Uncertainty regarding the value of his compensation package at his current job also complicates the matter of deciding how long front pay could be awarded.⁴ Front pay is only necessary until Plaintiff recovers the value of his lost wages and benefits, or had the opportunity to do so. *Sellers*, 839 F.2d at 1141. Computing front pay in this situation requires more than simply projecting a known

---

² Dr. Nassar does not argue that the value of the compensation he would have received at UT Southwestern (as opposed to Parkland) exceeds that which he is receiving at his current job in California. As a result, his front pay calculations are based primarily on the Parkland figures.

³ The Court notes that Dr. Nassar received back pay for approximately 3.5 years.

⁴ The purpose of front pay is to compensate the plaintiff for the lost income and benefits that continue in the future as a result of discrimination or retaliation. *See Giles*, 245 F.3d at 489. The purpose is not punitive, and ends when the plaintiff has been made whole. *Palasota*, 499 F.3d at 488. Dr. Nassar testified that he would be eligible for productivity bonuses that, though not awarded to him in the past, may supplement his salary in the future.

amount into the future; it requires comparing and predicting the values of compensation packages from each of several different employers. Such projection extends far beyond the sort of "intelligent guesswork" that typically attends an award of front pay. *See* " *Reneau*, 945 F.2d at 870.

Another significant component of the front pay award Dr. Nassar requests is comprised of the value of lost honoraria or other compensation based on speaking or lecturing. Recovery of this income in the future is most appropriately viewed as compensatory damages as opposed to front pay. In contrast with specific fees lost that Dr. Nassar testified occurred in the past, the potential future income was neither identified by source or amount such that the Court could properly evaluate to what extent it would have been protected by the employment agreement or related to Dr. Nassar's employment with Defendant. Absent clear evidentiary support, the contingent losses in the future income are more adequately characterized as future pecuniary losses than elements of pay or benefits. In determining whether front pay is necessary to make the plaintiff whole, the Court may consider that the jury awarded substantial compensatory damages. *Reynolds*, 924 F.Supp. at 748. Though the jury's verdict was reduced by the statutory cap, the Court concludes that an award of front pay based in large part on figures considered in the jury's award is not equitably required.

### III.

### CONCLUSION

For the reasons stated above, the Court DENIES Plaintiff's motion for front pay.

**SO ORDERED and SIGNED: September 16, 2010**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE